## FANNIE GROVIT
*vs.*
## CITY OF NEW HAVEN

Superior Court      New Haven County      File No. 64071

MEMORANDUM FILED JANUARY 22, 1945.

*Edward S. Snyder,* of New Haven, for the Plaintiff.

*Vincent P. Dooley,* Corporation Counsel of New Haven, for the Defendant.

O'SULLIVAN, J. The jury returned a verdict for the plaintiff to recover $5,000, and the defendant seeks to have it set aside on the usual grounds. The amount awarded is indeed so grossly beyond fair and adequate compensation as to shock the conscience. It would be a niggardly understatement to characterize it as generous. It was an outstanding example of munificence.

At first blush it might seem that the customary order for a remittitur would meet the situation. But the defendant advances the proposition, unique in my experience, that the verdict should be set aside on the ground that manifest injustice has been done and the wrong is so plain as to justify the suspicion that the jury was swayed by prejudice and partiality. This claim rests upon a sound and long-acknowledged principle of law. Where the claim is meritorious, a court has a legal right and a moral duty to rectify the wrong by setting the verdict aside in its entirety. *Caldwell vs. Danforth,* 124 Conn. 468, 471; *Branford Trust Co. vs. Prudential Ins. Co.,* 102 *id.* 481, 485.

In support of its position, the defendant recounts certain events occurring during the course of the trial, from which it argues that, with a subtlety of which the jury were undoubtedly unaware, they exerted an emotional influence affecting not only the amount of the verdict but also the more basic question of liability.

The events to which the defendant refers should, perhaps, be mentioned. Shortly after the plaintiff was called to testify she began to weep and continued to do so until a recess was taken to permit her to recover her composure. After the trial was resumed, she again broke down and wept.

Furthermore, it is claimed, the argument of counsel was addressed to an effort to prejudice the jury against the city, by asserting that a certain important record had been surreptitiously removed from the files of the public works department in order to make more difficult the proper presentation of the plaintiff's case—a charge, I might add, that appeared to me to have not the slightest foundation.

Again, the plaintiff unresponsively answered a question during her examination by volunteering the statement that her doctor's bill of $25 was small because she could not afford medical care. Later her counsel, unwittingly, he assured the court, propounded another query which elicited the same reply, thereby accentuating her claimed poverty.

Again, the argument of counsel was an insidious appeal to the sympathetic consideration of the jury. In a rather clever manner he argued by way of apophasis, in that though discussing the grief of his client, he expressly disclaimed any intention of relying upon it as a means of arousing any emotion.

Finally, the jury, disproportionately composed, as they were, of ten women and two men, had their deliberations controlled by legal principles other than those submitted to them by the court. This claim is based on a question asked by the jury some considerable time after they had first retired to consider their verdict. The question was concerned with the income tax law and its possible effect upon any award which might be made in the plaintiff's favor. Colloquy between the court and the forelady indicated that the jury was prepared to add to the verdict such an amount as would provide for any tax to which the plaintiff might have been subjected on the award. Hence, it is urged, if a jury begin to discuss, as a basis for their verdict, a matter so completely off the proper trail, it awakens the suspicion, fortified by the occurrences enumerated above, that other erroneous notions of law may have dictated the answer to the question of liability.

These claims furnish a rather formidable foundation from which to reason, especially as the question of liability was not only a nice but also a close one. However, not being endowed with epoptic intuition of the mysterious forces, if any, at work in the jury room, I cannot with reasonable certainty conclude that the events, upon which the defendant relies, did in fact exert an improper influence upon the jury. Hence I approach the problem as one presenting only the question of excessiveness of the verdict.

The range of fair compensation in this case was between $750 and $1,750, the latter figure being the extreme limit of an amount resting within the legal rule as to damages. Accordingly, the verdict is set aside unless, within two weeks from this date, the plaintiff shall file a remittitur of $3,250; but if such remittitur is filed, judgment, as to the residue, shall thereupon be entered upon the verdict.